1
 2026 CO 2 In Re The People of the State of Colorado, Plaintiff: v. Juan Manuel Castorena, Defendant: No. 25SA179Supreme Court of Colorado, En BancJanuary 12, 2026
          
 Original Proceeding Pursuant to C.A.R. 21 Adams County
 District Court Case No. 20CR1055 Honorable Brett M. Martin,
 Judge
 
 
          
 Attorneys for Plaintiff:
 
 
           Alexis
 King, District Attorney, First Judicial District
 
 
          
 Rebecca A. Adams, Senior Appellate Deputy District Attorney
 
 
          
 Golden, Colorado
 
 
          
 Attorneys for Defendant:
 
 
           Megan
 A. Ring, Public Defender
 
 
           John
 Walsh, Deputy Public Defender
 
 
          
 Jeffrey Simonek, Deputy Public Defender
 
 
          
 Brighton, Colorado
 
 
          
 Attorneys for Respondent Adams County District Court:
 
 
           Philip
 J. Weiser, Attorney General
 
 2
 
           Emily
 Burke Buckley, Assistant Solicitor General
 
 
          
 Denver, Colorado
 
 
          
 Attorneys for Respondent Seventeenth Judicial District
 Attorney's Office:
 
 
           Brian
 S. Mason, District Attorney, Seventeenth Judicial District
 
 
           Todd
 Bluth, Senior Deputy District Attorney
 
 
          
 Brighton, Colorado
 
 
          
 Attorneys for Amicus Curiae Korey Wise Innocence Project:
 
 
           Jud
 Lohnes
 
 
          
 Boulder, Colorado
 
 
          
 JUSTICE HOOD delivered the Opinion of the Court, in which
 CHIEF JUSTICE MARQUEZ, JUSTICE BOATRIGHT, JUSTICE SAMOUR, and
 JUSTICE BERKENKOTTER joined.
 
 3
 
          
 OPINION
 
 
           HOOD
 JUSTICE
 
 
          ¶1
 In this original proceeding involving both the First and
 Seventeenth Judicial Districts, we consider whether, under
 Crim. P. 16(I)(c)(2), a trial court may order a nonparty to
 disclose materials or information to a defendant during
 pretrial discovery. We conclude that it may, but such orders
 are enforceable only if the court also obtains personal
 jurisdiction over the nonparty. Because the nonparty at issue
 here wasn't properly served, the trial court lacked
 personal jurisdiction over it. Therefore, the trial
 court's order is void.
 
 
          I.
 Facts and Procedural History
 
 
          ¶2
 The Office of the District Attorney for the
 Seventeenth Judicial District ("the 17th
 DA") charged Juan Manuel Castorena with first degree
 murder. Castorena's trial took place in the
 Seventeenth Judicial District, and a jury convicted
 him as charged. On appeal, a division of the court of appeals
 vacated his conviction, based on an evidentiary error, and
 remanded the case for a new trial. People v.
 Castorena, No. 22CA1591 (Oct. 24, 2024).
 
 
          ¶3
 While that appeal was pending, the Colorado Bureau of
 Investigation ("CBI") disclosed that a former CBI
 forensic scientist, Yvonne "Missy" Woods, was
 "the subject of an internal affairs and criminal
 investigation after discovering anomalies in her work as part
 of DNA testing in the lab." CBI Dep't of Pub.
 Safety, Former CBI Scientist Under Investigation,
 https://cbi.colorado.gov/news-article/
 
 4
 
 former-cbi-scientist-under-investigation
 [https://perma.cc/F5AA-QMRX]. The internal investigators
 reviewed hundreds of cases that might have been affected by
 Woods's alleged misconduct. CBI Dep't of Pub. Safety,
 Colorado Bureau of Investigation Releases Internal
 Affairs Report into Former Forensic Scientist Missy
 Woods,
 https://cbi.colorado.gov/news-article/colorado-bureau-of-investigation-releases-internal-affairs-report-into-former-forensic
 [https://perma.cc/LC2D-PLBM].
 
 
          ¶4
 The Office of the District Attorney for the First
 Judicial District ("the 1st DA") later filed over
 100 criminal charges against Woods based on her alleged
 criminal misconduct over fifteen years at the CBI. First Jud.
 Dist. Att'y's Off., Former CBI Lab Analyst Missy
 Woods Facing Criminal Charges, https://firstda.co/
 news-update/former-cbi-lab-analyst-missy-woods-facing-criminal-charges/
 [https://perma.cc/3TS3-ZR4C]. The prosecution of Woods is
 ongoing.
 
 
          ¶5
 Woods had testified for the prosecution in Castorena's
 first trial because she had analyzed the DNA evidence in his
 case. Because Castorena was concerned that Woods might have
 mishandled that evidence, he filed a "notice of
 assertion of due process and statutory right[s]" during
 the pretrial phase of his second trial, demanding samples of
 the DNA evidence for independent testing.
 
 
          ¶6
 Castorena also sent a letter to the 17th DA, requesting
 disclosure of information related to the government's
 investigation of Woods and her work,
 
 5
 
 including CBI internal affairs/quality-control investigations
 and the 1st DA's criminal investigation. Castorena
 recognized that the 17th DA was unlikely to have actual
 possession of the information he requested because Woods was
 being prosecuted by the 1st DA. Even so, he claimed that the
 17th DA had "a statutory and constitutional obligation
 to cause these materials to be in [its] possession."
 Therefore, pursuant to Rule 16(I)(c)(1), Castorena requested
 that the 17th DA "make 'diligent good faith efforts
 to cause such material to be made available to the
 defense.'"
 
 
          ¶7
 Castorena subsequently asked the court to order the 1st DA to
 disclose Woods's entire investigative file and
 sought sanctions against the 17th DA for violating Rule
 16's disclosure requirements. The 17th DA denied that it
 had violated Rule 16 and thus objected to sanctions.
 
 
          ¶8
 The court held a hearing on the matter and, under Rule
 16(I)(c)(2), ordered the 1st DA to disclose "the
 complete investigative criminal file for Jefferson County
 District Court case number 25CR136, People v. Yvonne
 Woods, . . . to the defendant and his attorneys."
 The court further ordered Castorena to serve the order on the
 1st DA, and it provided a deadline for the 1st DA to object
 or to move to quash the subpoena. About ten days later, the
 defense emailed notice of the court's order to the 1st
 DA, indicating that they had also mailed a copy of the order.
 
 6
 
          ¶9
 The 1st DA entered a special appearance to object to the
 court's order, arguing that (1) the court lacked
 jurisdiction over it as a nonparty in Castorena's case;
 (2) Rule 16 was an improper vehicle for obtaining the
 information requested; and (3) it hadn't been served with
 a proper subpoena. The 1st DA also petitioned this court for
 relief under C.A.R. 21 and moved the trial court to stay its
 discovery order pending resolution of the Rule 21 motion. The
 trial court granted the stay, and we issued an order to show
 cause.[1]
 
 
          II.
 Analysis
 
 
          ¶10
 We first explain our jurisdiction to hear this case and
 provide the relevant standard of review. We then broadly
 discuss the contours of pretrial criminal discovery in
 Colorado and the necessity of establishing personal
 jurisdiction before a court may issue enforceable orders.
 Finally, we consider the facts of this case and whether the
 trial court exceeded its authority by issuing the order here.
 
 
          A.
 Jurisdiction and Standard of Review
 
 
          ¶11
 We have sole discretion to exercise our original jurisdiction
 under C.A.R. 21. C.A.R. 21(a)(2); People v. Maes,
 2024 CO 15, ¶ 8, 545 P.3d 487, 490. Doing so,
 
 7
 
 however, "is an extraordinary remedy limited in purpose
 and availability." Maes, ¶ 8, 545 P.3d at
 490 (quoting People v. Owens, 2018 CO 55, ¶ 4,
 420 P.3d 257, 258); see also C.A.R. 21(a)(2). We
 therefore grant such relief "only when no other adequate
 remedy is available." C.A.R. 21(a)(2); see also
 Maes, ¶ 8, 545 P.3d at 490.
 
 
          ¶12
 In this case, the 1st DA's petition raises jurisdictional
 concerns. "We often review challenges to personal
 jurisdiction under C.A.R. 21 because they raise the question
 of whether it is fair to require" someone to appear
 before the court at all. Griffith v. SSC Pueblo Belmont
 Operating Co., 2016 CO 60M, ¶ 8, 381 P.3d 308, 312.
 In such situations, a conventional appeal might be inadequate
 because any harm is irreparable. See Solliday v. Dist.
 Ct., 313 P.2d 1000, 1002 (Colo. 1957). So it is here.
 Therefore, we exercise our original jurisdiction.
 
 
          ¶13
 We review de novo whether the trial court "exceed[ed]
 the bounds of its legal authority" by issuing the order
 in question. People v. Chavez, 2016 CO 20, ¶ 7,
 368 P.3d 943, 944.
 
 
          B.
 Pretrial Discovery in Criminal Cases
 
 
          ¶14
 In Colorado, there is no right to discovery in criminal
 cases, and courts have "no freestanding authority to
 grant criminal discovery beyond what is authorized by the
 Constitution, the rules, or by statute." People v.
 Silva-Jaquez, 2025 CO 11, ¶ 19, 564 P.3d 650, 654
 (quoting People v. Kilgore, 2020 CO 6, ¶ 15,
 455 P.3d 746, 749). Here, because the trial court relied on
 Rule 16 to order the 1st DA to disclose
 
 8
 
 the Woods case file to Castorena, we begin our
 analysis by considering the scope of Rule 16. See
 Kilgore, ¶ 16, 455 P.3d at 750.
 
 
          ¶15
 Crim. P. 16, titled "Discovery and Procedure Before
 Trial," controls discovery in criminal cases. It
 requires a prosecutor to "make available to the defense
 [specifically enumerated] material and information which is
 within the possession or control of the prosecuting
 attorney," Crim. P. 16(I)(a)(1), as well as "any
 material or information within his or her possession or
 control which tends to negate the guilt of the accused as to
 the offense charged or would tend to reduce the punishment
 therefor," Crim. P. 16(I)(a)(2); see also People in
 Int. of E.G., 2016 CO 19, ¶ 23, 368 P.3d 946, 952.
 
 
          ¶16
 If a defendant seeks information that isn't in the
 prosecutor's possession or control, Rule 16 requires
 prosecutors to "use diligent good faith efforts" to
 make available for the defense any material or information
 designated by the defense that "would be discoverable if
 in the possession or control of the prosecuting attorney and
 which is in the possession or control of other governmental
 personnel." Crim. P. 16(I)(c)(1). "[I]f the
 prosecuting attorney's efforts are unsuccessful and such
 material or other governmental personnel are subject to the
 jurisdiction of the court," the court "shall issue
 suitable subpoenas or orders to cause such material to be
 made available to the defense." Crim. P. 16(I)(c)(2).
 
 9
 
          ¶17
 With this language in mind, we consider whether Rule 16
 authorized the court to order the 1st DA to disclose the
 Woods materials to Castorena either because the 1st
 DA is (1) part of the prosecution at issue here or (2)
 "other governmental personnel" over which the trial
 court may exercise its jurisdiction.
 
 
          1.
 The Prosecution
 
 
          ¶18
 Information is within the prosecutor's possession or
 control if it is "in the possession or control of
 members of [the prosecutor's] staff and of any others who
 have participated in the investigation or evaluation of the
 case and who either regularly report, or with reference to
 the particular case have reported, to [the prosecutor's]
 office." Crim. P. 16(I)(a)(3).
 
 
          ¶19
 Colorado's prosecutors share similar responsibilities,
 but they aren't monolithic. Each district attorney's
 office is distinct and only has the authority to perform its
 constitutional and statutory duties within its judicial
 district. See Colo. Const. art. VI, §§ 10,
 13 (creating judicial districts and requiring each district
 to have an elected district attorney who shall carry out the
 various duties within that district); § 20-1-102(1),
 C.R.S. (2025) ("Every district attorney shall appear in
 behalf of the state and the several counties of his or her
 district ...."); see also People v. Taylor, 732
 P.2d 1172, 1178 (Colo. 1987) (explaining that a
 "district attorney is vested with authority to initiate
 criminal prosecutions for crimes committed within the
 geographical boundaries of the judicial district served by
 the district
 
 10
 
 attorney," but has no authority "to initiate a
 criminal prosecution for crimes committed outside his
 judicial district"). This authority confirms what
 intuition suggests: The 1st DA isn't a member of the 17th
 DA's staff. Castorena makes no argument to the contrary.
 
 
          ¶20
 Moreover, the record fails to reveal that the 1st DA was
 involved, in any way, in the 17th DA's investigation into
 Castorena's alleged offenses.
 
 
          ¶21
 Therefore, the 1st DA's materials aren't in the
 possession or control of the relevant prosecuting
 attorney-the 17th DA.
 
 
          2.
 Other Governmental Personnel
 
 
          ¶22
 The parties agree that the 1st DA is, however, "other
 governmental personnel." Crim. P. 16(I)(c). So, the
 trial court has authority to order the 1st DA to disclose the
 requested materials if (1) the 1st DA is "subject to the
 jurisdiction of the court" and (2) the material would be
 discoverable if it were in the prosecutor's possession.
 Id.
 
 
          ¶23
 "A court's jurisdiction is defined as 'its
 "power to entertain and to render a judgment on a
 particular claim"'"-that is, it "'is
 the court's authority to hear and determine a
 matter.'" In re People in Int. of S.A.,
 2022 CO 27, ¶ 5, 511 P.3d 597, 600 (quoting People
 v. C.O., 2017 CO 105, ¶ 21, 406 P.3d 853, 858).
 Jurisdiction takes two forms: "(1) subject matter
 jurisdiction-the power to determine a specific type of claim;
 and (2) personal jurisdiction-the power over a specific
 party." Id.
 
 11
 
          ¶24
 District courts are courts of general jurisdiction and
 therefore enjoy broad subject matter jurisdiction. Colo.
 Const. art. VI, § 9(1); S.A., ¶ 6, 511
 P.3d at 600; People v. Sprinkle, 2021 CO 60, ¶
 16, 489 P.3d 1242, 1245. It is undisputed that the trial
 court had subject matter jurisdiction here. But a trial
 court's jurisdiction over "nearly all criminal
 matters," Strepka v. People, 2021 CO 58, ¶
 13, 489 P.3d 1227, 1230, doesn't provide the court with
 personal jurisdiction over a nonparty. See United Bank of
 Boulder, N.A. v. Buchanan, 836 P.2d 473, 477 (Colo.App.
 1992); accord ReMine ex rel. Liley v. Dist. Ct., 709
 P.2d 1379, 1381 (Colo. 1985).
 
 
          3.
 Personal Jurisdiction: Service of Process
 
 
          ¶25
 To establish personal jurisdiction over a nonparty, there
 must be valid service of process. Sebastian Holdings,
 Inc. v. Johansson, 2025 COA 60, ¶ 17, 574 P.3d 720,
 726. Rule 16 doesn't contain a service-of-process
 provision. And "an omission from Rule 16 signifies
 something a district court lacks authority to order, not
 something it has authority to order." Kilgore,
 ¶ 26, 455 P.3d at 751 (explaining that a court "has
 authority to order only discovery that is specifically
 authorized by Rule 16"). Thus, Rule 16, on its own,
 doesn't provide a court with personal jurisdiction over a
 nonparty in a criminal case.
 
 
          ¶26
 But we don't construe criminal procedural rules in a
 vacuum; instead, we read the rules "in pari materia with
 the other rules . . . 'to provide for the just
 determination of criminal proceedings.'" People
 v. Arellano-Avila, 20 P.3d 1191, 1192-93 (Colo. 2001)
 
 12
 
 (quoting Crim. P. 2). As a result, we must consider whether
 other criminal procedural rules can provide the missing
 procedure by which a court can establish personal
 jurisdiction over a nonparty.
 
 
          ¶27
 Remember that Crim. P. 16(I)(c)(2) authorizes a court to
 "issue suitable subpoenas or orders" to facilitate
 a defendant's discovery of materials held by governmental
 personnel other than the prosecuting attorney.
 
 
          ¶28
 Let's start with the service of a subpoena. Crim. P. 17
 "governs subpoenas in criminal prosecutions,"
 People v. Baltazar, 241 P.3d 941, 942 (Colo. 2010),
 and grants parties "the right to compel the attendance
 of witnesses and the production of tangible evidence by
 service upon them of a subpoena to appear for examination as
 a witness upon the trial or other hearing," Crim. P. 17;
 see also E.G., ¶ 20, 368 P.3d at 951. Rule 17
 allows materials to be produced before trial "under the
 supervision of the court in order to facilitate and expedite
 trials involving voluminous documents." People v.
 Spykstra, 234 P.3d 662, 668 (Colo. 2010).
 
 
          ¶29
 Rule 17 also provides the requirements for proper service of
 any subpoena to produce witnesses or materials. It explains
 the requisite contents of the subpoena, who may serve it, and
 methods for effectuating proper service; it also allows for
 challenges to compliance. Crim. P. 17. Thus, Rule 17 provides
 a mechanism to properly serve a nonparty and establish
 personal jurisdiction over them, which provides the trial
 court with the authority to issue a "suitable
 
 13
 
 subpoena" under Crim. P. 16(I)(c)(2) to compel other
 governmental personnel to disclose materials.
 
 
          ¶30
 We have consistently interpreted the scope of a court's
 Rule 17 subpoena power to be limited. Although "a
 defendant has a right to obtain material, exculpatory
 evidence from the prosecution, which 'if suppressed,
 would deprive the defendant of a fair trial,'"
 E.G., ¶ 23, 368 P.3d at 952 (quoting United
 States v. Bagley, 473 U.S. 667, 675 (1985)),
 "[t]here is no broad constitutional right of a defendant
 to access the court's powers to conduct his own
 investigation," id. at ¶ 25, 368 P.3d at
 952-53; see also Spykstra, 234 P.3d at 669
 (explaining that Rule 17 doesn't "create an
 equivalent to the broad right of civil litigants to discovery
 of all information that is relevant or may lead to the
 discovery of relevant information").
 
 
          ¶31
 Rule 17 subpoenas are not intended to be used as
 investigative tools and therefore may not "provide for
 expanded discovery" beyond what is authorized by Rule
 16. Baltazar, 241 P.3d at 943-44; see also
 Spykstra, 234 P.3d at 668; 6 Wayne R. LaFave et al.,
 Criminal Procedure § 24.3(f), Westlaw (5th ed.
 database updated Nov. 2025) (explaining that Rule 17
 "permits subpoenas to obtain evidence, but not to look
 for it"). To ensure Rule 17 subpoenas aren't
 misused, when a defendant seeks discovery of nonparty
 materials, the defendant must show:
 
 
 (1) A reasonable likelihood that the subpoenaed materials
 exist, by setting forth a specific factual basis;
 
 
 (2) That the materials are evidentiary and relevant;
 
 14
 
 (3) That the materials are not otherwise procurable
 reasonably in advance of trial by the exercise of due
 diligence;
 
 
 (4) That the party cannot properly prepare for trial without
 such production and inspection in advance of trial and that
 the failure to obtain such inspection may tend unreasonably
 to delay the trial; and
 
 
 (5) That the application is made in good faith and is not
 intended as a general fishing expedition.
 
 
 Spykstra, 234 P.3d at 669 (footnote omitted). This
 showing ensures that any subpoena issued under Rule 17 is
 "suitable" for Rule 16 purposes and not merely an
 exploratory excursion for information that may not otherwise
 be discoverable. See id. at 668-69; cf.
 Arellano-Avila, 20 P.3d at 1193 ("The subpoena
 requirement is an important constraint on the court's
 ability to order depositions, because the court must direct a
 subpoena to issue for the party to be deposed. It logically
 follows that the court may not order a deposition of any
 person who may not be legally served a subpoena.").
 
 
          ¶32
 But what if, instead of a subpoena, a trial court, as it did
 here, issues an order under Crim. P. 16(I)(c)(2)?
 After all, that rule allows the court to issue "suitable
 subpoenas or orders," id. (emphasis
 added), and because Rule 17 only applies to subpoenas, its
 service-of-process procedures wouldn't apply. This means
 that, to avoid rendering the term "orders"
 superfluous, we must turn to other rules that could govern
 service. See People v. Rodriguez-Morelos, 2025 CO 2,
 ¶ 8, 562 P.3d 71, 73.
 
 15
 
          ¶33
 Crim. P. 49(c) explains how to serve parties with a
 court order, but it doesn't address service on a
 nonparty. No rule of criminal procedure does. Crim.
 P. 57(b), however, explains that "[i]f no procedure is
 specifically prescribed by rule, the court may proceed in any
 lawful manner not inconsistent with these Rules . . . and
 shall look to the Rules of Civil Procedure and to the
 applicable law if no Rule of Criminal Procedure exists."
 
 
          ¶34
 Turning to the Colorado Rules of Civil Procedure, C.R.C.P.
 4(e) "sets forth the general rule for service of process
 on individual persons [and various corporate entities] within
 Colorado," including service to nonparties to the case.
 Buchanan, 836 P.2d at 477. It requires personal
 service to the individual, to the registered agent of an
 organization, or to the principal officer of a state agency.
 C.R.C.P. 4(e). If a party is unable to accomplish personal
 service, they may ask the court to allow service by mail if
 they satisfy certain conditions. C.R.C.P. 4(f)-(g).
 
 
          ¶35
 Accordingly, if the court issues a Crim. P. 16(I)(c)(2)
 order that compels a nonparty's compliance, the
 court must obtain personal jurisdiction over that nonparty
 through proper service under C.R.C.P. 4. See Sebastian
 Holdings, ¶ 17, 574 P.3d at 726; Gilford v.
 People, 2 P.3d 120, 125 (Colo. 2000) ("A defect in
 personal jurisdiction may arise where the departure from
 statutory procedure concerns notice, service of process, or
 residency limitations on a court's jurisdiction.").
 "If service does not conform to [C.R.C.P.] 4's
 requirements, the court does not obtain
 
 16
 
 personal jurisdiction over the [individual,] and any
 resulting judgment is void." Minshall v.
 Johnston, 2018 COA 44, ¶ 13, 417 P.3d 957, 960;
 see also Sebastian Holdings, ¶¶ 17-21, 574
 P.3d at 726-27; Colorow Health Care, LLC v. Fischer,
 2018 CO 52M, ¶ 21, 420 P.3d 259, 263
 ("[J]urisdictional statutes trigger strict compliance
 ....").
 
 
          ¶36
 And, any order issued under Crim. P. 16(I)(c)(2), even if
 properly served, must be a "suitable" one. Crim. P.
 16(I)(c)(2) ("The court shall issue suitable subpoenas
 or orders ...."); see also Hobbs v. City of
 Salida, 2025 CO 50, ¶ 20, 576 P.3d 164, 168
 ("[W]hen a sentence uses a parallel construction of all
 nouns in a series, 'a prepositive . . . modifier normally
 applies to the entire series.'" (quoting Antonin
 Scalia &Bryan A. Garner, Reading Law: The
 Interpretation of Legal Texts 147 (2012))). So, the
 court must ensure that, like a subpoena, its orders
 adhere to Rule 16's limited scope and aren't used to
 pursue fishing expeditions. See E.G., ¶ 25, 368
 P.3d at 952-53 (explaining that defendants have no
 constitutional right to use a court's orders as
 investigative tools or to demand disclosures beyond those
 authorized by Rule 16); People v. Dye, 2024 CO 2,
 ¶ 55, 541 P.3d 1167, 1178 (explaining that a trial court
 may not "surpass the limits of its authority pursuant to
 the terms of Crim. P. 16").
 
 
          ¶37
 Castorena argues that, regardless of Rule 16's grant of
 authority, a trial court's inherent authority to enforce
 its lawful orders provides the basis for a Rule 16 order. He
 emphasizes that, "a trial court has inherent authority
 to carry
 
 17
 
 out its duties, including as reasonably required to allow it
 to efficiently perform its judicial functions; to protect its
 dignity, independence, and integrity; and to effectuate its
 lawful actions." Silva-Jaquez, ¶ 28, 564
 P.3d at 655. And this inherent authority provides courts with
 "ample discretion" to manage cases before trial.
 Kilgore, ¶ 1, 455 P.3d at 747.
 
 
          ¶38
 But that discretion is not unlimited. "[A] court's
 authority to order discovery must be rooted in a
 constitutional provision, statute, or rule."
 Silva-Jaquez, ¶ 39, 564 P.3d at 657. A court
 "may not rely on its case-management discretion to order
 disclosures that exceed the discovery authorized by Rule
 16." Kilgore, ¶¶ 1, 26, 455 P.3d at
 747-48, 751 (explaining that a court may not rely on its
 inherent authority and discretion to "expand the
 contours" of Rule 16); accord Silva-Jaquez,
 ¶ 44, 564 P.3d at 657 ("Disregarding the legal
 boundaries of discovery in criminal cases in the name of
 expediency via a trial court's inherent authority at once
 invites chaos and undermines the Judicial Branch's
 interest in the uniform administration of justice.").
 
 
          ¶39
 Moreover, a court's inherent authority allows the court
 to enforce only its lawful orders, and
 "[w]ithout personal jurisdiction, a court is
 'powerless to proceed' and cannot enter binding
 orders against a party." S.A., ¶ 5, 511
 P.3d at 600 (quoting Ruhrgas AG v. Marathon Oil Co.,
 526 U.S. 574, 584 (1999)).
 
 18
 
          ¶40
 Therefore, the court's inherent authority doesn't
 provide a trial court with the authority to order a nonparty
 in a criminal case to disclose materials in its possession.
 And although Crim. P. 16 does authorize a trial court to
 issue "suitable subpoenas or orders" on a nonparty,
 the court must obtain personal jurisdiction over the nonparty
 through proper service, either under Crim. P. 17 or C.R.C.P.
 4.
 
 
          C.
 Application
 
 
          ¶41
 Here, the trial court recognized the limits of its Rule 16
 authority to order a nonparty to disclose material. The court
 found that the material would be discoverable if in the 17th
 DA's possession and that the 17th DA would be unable to
 obtain the material through diligent good-faith efforts. (As
 to the latter point, defense counsel conceded "that it
 would not be fruitful for the 17th DA to make requests of the
 1st [DA] for the records of an ongoing criminal
 prosecution.") Lastly, the trial court reaffirmed that a
 Rule 16 order may not be used by the defense to avoid a
 Spykstra analysis. It therefore ordered the defense
 to properly serve the 1st DA and recognized that the 1st DA
 was entitled to notice and an opportunity to be heard on any
 motion to quash. Thus, the trial court's order largely
 aligns with our holding today.
 
 
          ¶42
 But Castorena never properly served the 1st DA with the
 court's Crim. P. 16(I)(c)(2) order. Although defense
 counsel physically mailed and emailed notice of the order to
 the 1st DA, knowledge of the existence of an order may not
 
 19
 
 substitute for valid service of process. Weber v.
 Williams, 324 P.2d 365, 369 (Colo. 1958). Nor did the
 1st DA's special appearance to challenge jurisdiction and
 to object to the lack of service of a Rule 17 subpoena waive
 proper service.[2] Delta Cnty. Mem'l Hosp. v. Indus.
 Claim Appeals Off., 2021 COA 84, ¶ 22, 495 P.3d
 984, 991 ("[A] non-party may appear specially to contest
 a court's personal jurisdiction over it and such special
 appearance may not result in the court's acquiring
 personal jurisdiction over the non-party.").
 
 
          ¶43
 Therefore, because Castorena never properly served the 1st DA
 with the court's order, the trial court never established
 personal jurisdiction over the 1st DA, and its order
 compelling disclosure of the Woods files under Rule
 16 is void. See S.A., ¶ 30, 511 P.3d at 605;
 cf. Nickerson v. Network Sols., LLC, 2014 CO 79,
 ¶ 9, 339 P.3d 526, 529 ("A judgment is void if the
 court lacked personal jurisdiction over the parties
 ...."). Because we resolve the matter based on the
 court's lack of
 
 20
 
 jurisdiction, we need not address whether the information
 sought would be discoverable if it were in the 17th DA's
 possession. If proper service is made after the case is
 remanded, the trial court should complete this analysis by
 addressing the Spykstra factors enumerated above.
 
 
          III.
 Conclusion
 
 
          ¶44
 We make absolute the order to show cause, vacate the trial
 court's order, and remand the case for further
 proceedings consistent with this opinion.
 
 
          
 JUSTICE GABRIEL dissented.
 
 21
 
          
 JUSTICE GABRIEL, dissenting.
 
 
          ¶45
 The trial court below issued an order pursuant to Crim. P.
 16(I)(c)(2) requiring the First Judicial District
 Attorney's office to produce certain documents. The court
 further required that its order be served on that office, and
 it gave that office time to file a motion to quash. Like the
 majority, I believe that this procedure fully complied with
 the requirements of Crim. P. 16(I)(c) and properly recognized
 that service was necessary to establish the requisite
 personal jurisdiction over the First Judicial District
 Attorney's office, a non-party to this case. Accordingly,
 the only issue is whether that office was properly served.
 Unlike the majority, I believe that it was.
 
 
          ¶46
 In concluding that the trial court's order was not
 properly served here, the majority does not acknowledge (and
 indeed does not even mention) the undisputed fact that the
 First Judicial District Attorney's office has
 never taken issue with the manner in which it was
 served (it argued only that the trial court lacked personal
 jurisdiction over it because the court issued an order under
 Crim. P. 16(I)(c)(2), rather than a subpoena under Crim. P.
 17, an argument that is different from whether service was
 properly effectuated and that the majority correctly
 rejects). It is undisputed that Juan Manuel Castorena's
 counsel delivered the trial court's order to the First
 Judicial District Attorney's office and that that office
 actually received the order, without objection. In these
 circumstances, I
 
 22
 
 believe that the First Judicial District Attorney's
 office has waived any objection to the manner in which it was
 served, and the trial court therefore properly exercised
 personal jurisdiction over that office. To hold otherwise, as
 the majority does, elevates form over substance and serves no
 purpose other than to require Castorena's counsel to go
 through the pro forma exercise of re-delivering the trial
 court's order to the First Judicial District
 Attorney's office, this time observing the formalities of
 service under C.R.C.P. 4(e), which will put us in precisely
 the same position that we are in today.
 
 
          ¶47
 Accordingly, I respectfully dissent.
 
 
          I.
 Factual Background
 
 
          ¶48
 This is yet another case in which a criminal defendant who
 was convicted in a trial involving Missy Woods's DNA
 analysis is seeking to obtain files held by the People
 regarding Woods and in which the People are vigorously
 resisting that effort, despite the obvious fact that at least
 some of the information will eventually need to be turned
 over to these criminal defendants.
 
 
          ¶49
 Here, Castorena requested documents related to Woods's
 prosecution by the First Judicial District Attorney's
 office. Castorena properly made this request under Crim. P.
 16, and the Seventeenth Judicial District Attorney's
 office, which is prosecuting the case here, made diligent
 efforts to obtain those documents from the First Judicial
 District Attorney's office (as the majority observes,
 Maj. op. ¶ 22,
 
 23
 
 the latter office constitutes "other governmental
 personnel" within the meaning of Crim. P. 16(I)(c)(1)).
 The First Judicial District Attorney's office, however,
 refused to provide any of these documents.
 
 
          ¶50
 Castorena thus requested that the trial court issue, pursuant
 to Crim. P. 16(I)(c)(2), "suitable subpoenas or orders
 to cause such material to be made available to the
 defense." The court ultimately granted that request,
 finding good cause to do so under that rule. The court then
 ordered Castorena to serve its order on the First Judicial
 District Attorney's office within seven days, and the
 court set a time by which that office could file a motion to
 quash or an objection to its order.
 
 
          ¶51
 Castorena's counsel (through their lead investigator)
 timely "served" the court's order on the First
 Judicial District Attorney's office by email and regular
 mail. Notably, in her email, the investigator asked the First
 Judicial District Attorney's office to let her know if
 there were any questions. That office does not appear to have
 responded with any questions. Nor did it at any time
 (including up until today) assert that this manner of service
 was improper or otherwise insufficient.
 
 
          ¶52
 Thereafter, the First Judicial District Attorney's office
 entered a special appearance in this case and argued that the
 trial court had no jurisdiction over it because, in that
 office's view, the court could obtain jurisdiction only
 by way of a subpoena under Crim. P. 17. The court ultimately
 rejected this argument and
 
 24
 
 stood by its earlier order, noting that it had acted under
 the authority of Crim. P. 16(I)(c)(2) and that it had
 "found good cause to issue 'suitable subpoenas or
 orders' to cause [the requested] material to be made
 available to the defense." In so ruling, the court
 reiterated that it had provided the First Judicial District
 Attorney's office with the opportunity to file a motion
 to quash, and the court observed, contrary to Castorena's
 position, that in addressing any such motion, the court would
 consider the factors governing production set forth in
 People v. Spykstra, 234 P.3d 662, 669-71 (Colo.
 2010).
 
 
          ¶53
 The First Judicial District Attorney's office then filed
 the present C.A.R. 21 petition, arguing that the trial court
 lacked jurisdiction over it, a non-party to this proceeding,
 and therefore the court had no jurisdiction to order it to
 respond to a discovery request without serving a subpoena
 under Crim. P. 17 (in contrast to an order under Crim. P.
 16(I)(c)(2)). We issued an order to show cause.
 
 
          II.
 Analysis
 
 
          ¶54
 Crim. P. 16(I)(c) provides, in pertinent part:
 
 
 (1) Upon the defense's request and designation of
 material or information which would be discoverable if in the
 possession or control of the prosecuting attorney and which
 is in the possession or control of other governmental
 personnel, the prosecuting attorney shall use diligent good
 faith efforts to cause such material to be made available to
 the defense.
 
 
 (2) The court shall issue suitable subpoenas or
 orders to cause such material to be made available to
 the defense, if the prosecuting
 
 25
 
 attorney's efforts are unsuccessful and such material or
 other governmental personnel are subject to the jurisdiction
 of the court.
 
 
 (Emphasis added.)
 
 
          ¶55
 Like the majority, I believe that the trial court properly
 issued the order pursuant to Crim. P. 16(I)(c). After
 Castorena requested materials that no one disputes would be
 discoverable in the hands of the Seventeenth Judicial
 District Attorney's office, the court required that
 office to use diligent good faith efforts to obtain the
 materials from the First Judicial District Attorney's
 office, which constitutes "other governmental
 personnel" under Crim. P. 16(I)(c)(1). After finding
 that the Seventeenth Judicial District Attorney's office
 had made such efforts but was unsuccessful in obtaining the
 materials, the court exercised its discretion under Crim. P.
 16(I)(c)(2) to issue "suitable subpoenas or
 orders to cause such material to be made available to
 the defense." (Emphasis added.)
 
 
          ¶56
 Then, perhaps recognizing that there was at least some
 question as to whether the First Judicial District
 Attorney's office should be treated as a non-party, the
 court ordered that Castorena effect service on that office
 and expressly gave the office an opportunity to file a motion
 to quash the order.
 
 
          ¶57
 In my view, this procedure was appropriate, and it enabled
 the court to obtain personal jurisdiction over the First
 Judicial District Attorney's office in precisely the same
 way that it would have obtained personal jurisdiction over
 the office had Castorena served a subpoena. Cf. Sebastian
 Holdings, Inc. v. Johansson,
 
 26
 
 2025 COA 60, ¶ 17, 574 P.3d 720, 726 (noting that
 service of process is a prerequisite to a court's
 obtaining personal jurisdiction over a defendant).
 
 
          ¶58
 As a result, the only issue regarding personal jurisdiction
 is whether the First Judicial District Attorney's office
 was properly served. That office, however, has never
 contested the manner in which it was served (i.e., by email
 and regular mail, rather than through a process server).
 Accordingly, I believe that it has waived any objection to
 the manner of service. Cf. C.R.C.P. 12(b)(2), (4)
 (distinguishing between an objection on the ground of lack of
 personal jurisdiction, which is the objection that the First
 Judicial District Attorney's office unsuccessfully
 pursued in this case, and an objection on the ground of
 insufficiency of service, which that office has never
 asserted).
 
 
          ¶59
 For these reasons, I would conclude that through the
 uncontested service of the trial court's Crim. P.
 16(I)(c)(2) order on the First Judicial District
 Attorney's office, the court properly exercised personal
 jurisdiction over that office, and I would therefore
 discharge our order to show cause.
 
 
          ¶60
 In concluding that Castorena did not properly serve the trial
 court's order on the First Judicial District
 Attorney's office, the majority ignores the fact that
 that office has never objected-and has therefore waived any
 objection-to the manner in which the order was served. And it
 was perfectly rational for that office to forego such an
 objection. It is undisputed that Castorena's counsel sent
 the order
 
 27
 
 to that office and that the office actually received it. In
 addition, I would fully expect that had Castorena's
 counsel asked the First Judicial District Attorney's
 office to accept service, it would have done so (and may well
 do so when we return this case to the trial court).
 
 
          ¶61
 In light of the foregoing, the only practical effect of the
 majority's ruling will be to require Castorena's
 counsel to go through the pro forma exercise of re-delivering
 the trial court's order to the First Judicial District
 Attorney's office, this time strictly observing the
 formalities of service under C.R.C.P. 4(e). Once this
 exercise is complete, we will be in precisely the same
 position that we are in today, namely, awaiting a motion to
 quash from the First Judicial District Attorney's office,
 after which the trial court will determine which portions of
 the Woods files that office will be required to
 produce. The extra step makes little sense to me, other than
 to delay this case further than it has already been delayed.
 
 
          III.
 Conclusion
 
 
          ¶62
 For these reasons, I agree with the majority that the trial
 court properly followed the requirements and procedures set
 forth in Crim. P. 16(I)(c). Unlike the majority, however, I
 would conclude that the First Judicial District
 Attorney's office waived any objection to the manner in
 which the trial court's order was served on it and,
 therefore, the trial court properly exercised personal
 jurisdiction over that office. I would thus discharge our
 order to show cause.
 
 28
 
          ¶63
 Accordingly, I respectfully dissent.
 
 
 ---------
 
 
 Notes:
 
 
 [1] The issue in the petition is framed as
 follows:
 
 
 Whether the 17th Judicial District Court had
 jurisdiction over the First Judicial District Attorney's
 Office-a non-party to an Adams County criminal case-to order
 it to respond to a request for discovery pursuant to Crim. P.
 16(I)(c)(2) without the proper service of a subpoena in
 accordance with Crim. P. 17.
 
 
 [2] Although the 1st DA's motion
 didn't use the term "personal jurisdiction,"
 the effect of the motion was to object to the court's
 authority to order the 1st DA, a nonparty, to disclose
 material absent personal jurisdiction as established through
 proper service of process. Because subject matter
 jurisdiction can never be waived, Sprinkle, ¶
 17, 489 P.3d at 1246, the only purpose in filing such a
 motion would have been to object to the lack of personal
 jurisdiction, James v. James, 262 P. 925, 926 (Colo.
 1927); see also City of Thornton v. Pub. Utils.
 Comm'n, 391 P.2d 374, 376 (Colo. 1964). Thus, the
 1st DA preserved the issue of proper service of an order
 establishing personal jurisdiction. See Sebastian
 Holdings, ¶ 17, 574 P.3d at 726 ("[V]alid
 service of process . . . is a prerequisite for the district
 court's personal jurisdiction.").
 
 
 ---------